Final case on our call this morning is Agenda No. 11, Case No. 105-158, Billy Taylor v. Pekin Insurance Company. Mr. Mudge, are you ready to proceed? Your Honor, State Chief of Court, Mr. Berry, my name is Steve Mudge and I represent Pekin Insurance Company in this case. And this case highlights the distinction that exists between what is a set-off and what is a lien. From the moment that the plaintiff, Appley, filed their declaratory judgment action in this case, they kept calling what is a policy set-off a statutory lien. That same type of discussion was carried through into the Appellate Court decision, which once again kept calling a policy set-off, which has been recognized by this Court as being a valid set-off, as a lien. The Appellate Court Fifth District should be reversed because they misapplied Section 305-5B of the Illinois Workers' Compensation Act where no lien, workman's compensation lien, was created. And it, in effect, requires Pekin Insurance Company to pay the legal expenses the plaintiff, Appley, would have incurred had they collected a lien and had they reimbursed a workman's compensation carrier or employer when they hadn't, in fact, collected a lien and provided a fund for another party. In dissenting, Fifth District Justice Donovan, in his dissent, basically summed up our entire argument in this case. He stated that the Appellate Court reduced a set-off by the attorney's fees as if a set-off was a lien and a fund had been created by the plaintiff when, in fact, no fund had been created. And as a result, we believe their decision should be reversed. This case simply did not involve either an actual or potential reimbursement to an employer or a workman's compensation carrier of money that they had paid out in a workman's compensation case. The Appellate Court reduced Pekin's right of set-off, which is the policy provision which provides that in an uninsured, which this case was, or an uninsured motorist claim, the amount paid to the claimant in their previous workman's compensation claim. This Court has recognized that a carrier, automobile carrier's, right of a set-off is consistent with public policy. But here, the Appellate Court reduced an imaginary lien, a non-existent lien, by calling it a lien when, in fact, it was a set-off. And then provided essentially what is a fund doctrine recovery or, if by application of the Workman's Compensation Act, a 25% fee for collecting a work comp lien or reimbursing a work comp lien that they never collected and they never reimbursed. The plaintiff's and the Appellate Court's only authority for authorizing a 25% reduction of the policy set-off was Section 305 slash B of the Illinois Workman's Compensation Act, which in its own terms is expressly limited to situations where there, in fact, has been or will be a reimbursement. The decision of the Appellate Court in the Fifth District is inconsistent with decisions they have rendered themselves. For example, in Thies v. Cordy-Plonker, which we cited in our brief, the Fifth District rejected an employer's attempt to assert a workman's compensation lien against their employee's uninsured motorist benefits. So in other words, in that case, a workman's compensation carrier paid out their workman's compensation benefits to a plaintiff. And then they claimed that they could go after their first party coverage under their uninsured motorist benefits and that the work comp carrier or the employer could go and take away that uninsured motorist benefit from the insured. The Illinois Fifth District stated, rejected this argument and indicated, quote, as is clear from the text of Section 5B, the recovery of attorney's fees and expenses only applies to employers. But regardless of whether this Court finds that Section 305B is incorporated into Pekin's policy, the clear language of 305B of a 25% attorney's fee is only triggered when the attorney actually procures money from a third party tortfeasor and reimburses the employer or the comp carrier. As the Fifth District in Thies said, quote, the bottom line is that the 25% attorney's fees and expenses can only come from the employer and if a recovery and only if a recovery is affected for that employer by the plaintiff's attorney. This has not occurred here. What Pekin did after they litigated the issue of the amount of damages that their insured was entitled to under his uninsured motorist policy because he was injured by an uninsured motorist was deduct as provided by the policy the amount that Pekin had previously paid in satisfying the workman's compensation claim. Now, this Court has stated that a workman's compensation claim does serve a valid purpose when one exists because it serves the purpose of allowing both the employer and the injured employee an opportunity to reach the true offender for an occurrence and injury while preventing the employee from obtaining a double recovery. And in effect, what the appellate court did here is sanction a double recovery in the amount of a little over $40,000 by deducting from the set off the imaginary fee for the imaginary fund that was never collected and never will be collected from no one. Originally, this Court may recall that in 1957 or prior to 1957, an employer was entitled to a 100% reimbursement of their comp benefits from a third party without a reduction for fees or expenses in procuring their reimbursement. In 1957, the Illinois legislature changed this law so that if a party did obtain a reimbursement of a work comp lien that they could deduct a 25% fee and their pro rata share of expenses. But I would remind you that in this case, again, there has been no reimbursement. There has been no recovery. Nobody's gone out and chased the uninsured motorist and collected money from him, and nobody is going to pay that money to the carrier. But most importantly, the plaintiff has not recovered that money and never will recover that money. But notwithstanding the fact that nothing has been recovered and nothing gained, the Court, in effect, awarded a fee for services that were never rendered and has, in effect, provided for an unjust enrichment. This decision is inconsistent with other Illinois appellate courts when applying Section 5B of the Workers' Compensation Act. It is inconsistent with the decision from both the 1st and 2nd District's appellate district courts. As Judge Donovan's dissent pointed out, in the case of Terry v. State Farm Mutual Automobile Insurance Company, the 2nd District held that an employer could not assert a lien under an uninsured or underinsured motorist policy. The 2nd District pointed out that 5B only attaches or applies to liability in tort, not to contractual liability as with an insurance policy. Likewise, in Hartford Accident and Indemnity Company v. Cummins, the 1st District held that a city, which was a self-insured under a Worker's Compensation Act, had no interest in payments made to its employee under an uninsured motorist provision of his policy. So in these cases, they show that 5B was not adopted and pulled into the active effect of an insurance policy that says you and a carrier can assert a lien against a noninsured motorist or underinsured motorist benefits. Three Illinois Supreme Court decisions have held that this type of set-off provision is valid and complies with public policy. This Court first addressed this issue in the decision of Allman v. Wolverine in 1970, where the Court upheld an almost identically worded set-off provision as at issue in this case. And in that particular case, the Court ruled that the carrier could reduce their uninsured motorist benefit payout by the amount of workman's compensation benefits obtained by the insured. Then in 1978, in the case of Stryker v. State Farm, this Court refused to overrule Allman and it prevented or precluded uninsured from recovering benefits. Well, wait a minute, I want to keep my thoughts straight here. Well, in that particular case in Stryker, I believe you had a decision where the uninsured motorist benefits were equal to the amount of the workman's compensation benefits paid out. So this Court said there was nothing available. They both wiped each other out. And finally, in 1992, this Court, in Salzer v. Country Mutual, recognized that this set-off provision could be applied, setting off workman's compensation benefits paid in an underinsured motorist case or claim as well as an uninsured motorist claim. And in fact, in Salzer, the Court performed, this Court performed the calculation we performed once the plaintiff obtained his uninsured motorist recovery. In Salzer, this Court stated it's in the context of an underinsured motorist claim. First, in an underinsured motorist claim, you deduct the amount that the insured received from the BI insured. Then the Court indicated it would deduct 100% of the amount with no reduction for fees, no expenses, from the balance under the underinsured motorist policy, the end result being that there was nothing to be recovered under the policy, similar to what occurred in the Stryker decision. Now, in requiring Pekin to deduct an additional $40,467 to cover, essentially, the imaginary fee for an imaginary recovery that never occurred, the appellate court has rewritten the clear and unambiguous language of the Pekin insurance policy. In addition, it has provided a double recovery to the plaintiff by giving him an additional $40,467 above and beyond what he was entitled to if you applied the applicable policy language. The Pekin policy specifically says that, quote, any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid or payable for the bodily injury under workers' or workmen's compensation law. And that, of course, is the same language, essentially, that was covered in both the Allman, the Stryker, and then ultimately the Salzer decision. And this court has held that where policy language is clear and unambiguous and where it does not violate public policy, that the court must give effect to the intent of the parties and the language of their contract. There's been no claim in this case made by the plaintiff that the Pekin policy is in any way unclear or ambiguous. The appellate court also erred in holding that your decision in Allman was superseded by the adoption of Section 143A-2, Subsection 2 of the Illinois Insurance Code. What that particular statutory provision did was require carriers to provide an identical amount of uninsured motorist coverage for their insured as they have for their BI limits. Back when I began practicing law, insurance companies could offer you $100,000, for example, in BI limits, but then they could offer you $20,000 in U limits so that if you got hit by an uninsured motorist, you'd be limited to $20,000. I think at some point there, there was a requirement under the law that the insured had to endorse something if they did not want identical limits between their U and their BI limits. All the statute, the Insurance Code Statute 143A-2 did was require insurance companies, when they write a $100,000 BI policy, is to provide an identical amount of U coverage to their insured. Nowhere in that statute does it discuss or create a right for an insured whose lawyer goes out and doesn't collect an imaginary lien from an imaginary party that they could deduct 25% as an earned legal fee for a service they didn't render. Now, in fact, the plaintiff is attempting to assert, the appellee is attempting to assert that if we apply a set-off as described in the policy, that Taylor is going to receive less than what he would have received had he been injured by an insured motorist. Of course, first, uninsured motorist coverage isn't triggered until you have an accident involving an uninsured motorist. But uninsured motorist coverage has been interpreted correctly as an attempt to put an insured in the same position as if they were hit by an insured or fully insured driver. Now, in this particular case, let's say there was a third party out there that was fully insured. Well, of course, in that particular case, there the attorney can go out, and I'm not talking about insured in the sense of maybe we should take it out of the automobile context. Let's say a driver is going down the road, a bridge collapses, and some third party non-driver that is responsible for him. In that type of context, a person could collect their workman's compensation benefits for their client and could go after some third party and could create a fund for the benefit of the work comp carrier or the employer to reimburse what they paid out under workman's compensation. But that is not what's occurred here. What's occurred here is nothing. It's simply the appellate court rule that at the end of the day, even though the policy language is clear, even though that policy language has been adopted and approved by this court, we're just going to imagine that the plaintiff's counsel is going to recover and we're going to take what's called a set-off and turn around and call it a lien and then let him deduct from the set-off amount 25% of a fee, which he never incurred, never did anything for anyone other than his own client to earn. So because of this, we would ask that this court reverse the appellate court and order a reinstatement of the trial court's decision, which accurately followed the law, and we thank you. Do you have any questions for me? Everyone else has hopefully, I guess, maybe had a more interesting case than I did, but this is pretty much a routine set-off case and a pretty much of a, I don't know, and apparently no questions. Most attorneys that appear in front of us are not happy that they're questioned the entire time. Okay. Well, I guess I'll go home and say I was left out today. What are you doing this weekend? Working on a farm this weekend. Thanks very much. Mr. Berry? Thank you, Your Honor. I please the court. I'm William Berry. I represent Billy Taylor, and while I count Mr. Mudge as one of my friends, in this case we disagree on almost every point, I do believe, except he began this argument with this. This is a distinction between set-off and lien, and that's exactly what we are talking about. The argument advanced by Pekin in this point assumes that we are arguing that we are entitled to a lien or some compensation for a lien, but that is not it. What we are doing commenced actually with the allegations in the initial complaint, because in the initial complaint, in paragraphs 13, 14, and 15, it was alleged that had, that at all times set forth herein, there was the insurance code provision that provided for uninsured motorist coverage, and had this torque feeser that was not insured been fully insured, and had this proceeded to a recovery in the court, and I use this language, if the uninsured motorist had been insured under the terms of the policy, Plaintiff would not have been required to reimburse the workers' compensation carrier to the extent of the attorney's fees incurred. This case is an evolution of the insurance code that commenced with Oman. Oman decided after the legislature adopted the uninsured motorist provisions, and it is an evolution of language from Oman to Stryker to Sulzer, even Gillen v. State Farm to now, because at the beginning, when the uninsured motorist provision was adopted, it required that the insurance companies make available to all of their insurance a policy for uninsured motorist coverage that was equal to the level of financial responsibility, 20,000. Sulzer addressed, Stryker addressed that issue, and then Oman and Stryker, the claimants came up here and said, hey, you know, we should not, since there is no payback, since nobody's going to collect, we shouldn't be responsible for a setoff. We should not, that setoff should not be deducted from the total amount we recover when we arbitrate the uninsured motorist claim. And this court said, now, the purpose of the insurance code, the purpose of this adoption, this particular provision that gives us uninsured and subsequently underinsured coverage, is to place the insured in the same position he or she would be in should the tortfeasor have been covered. Now, in Oman, this court made the, yes? We have to talk about 5B, though, right? Mr. Taylor, did Mr. Taylor recover any damages from Mr. Gentry in this case? No. Uninsured motorist coverage. And Mr. Taylor didn't even initiate legal proceedings against Mr. Gentry, right? No. That's why uninsured motorist coverage is there. Right. So the plaintiff here didn't sue anyone, right? Well, it made a claim. It made a claim against Pekin under the policy provisions. But didn't sue, certainly no third-party judgment or settlement was obtained. There was no trial court action against Mr. Gentry. That is correct. And Pekin received no reimbursement whatsoever as a result of the uninsured motorist claim. No, they did not, because Pekin is also the workers' comp carrier. And then Pekin, I just want to make sure I have the facts right, they exercised its set-off right under the insurance contract and reduced the plaintiff's liability payout by the amount of plaintiff's comp payout. By 100% of the amount. All right. Does the wording of 5B make any difference at all? Legal proceedings may be taken against such other person to recover damages notwithstanding? There was no legal proceeding against such other person here. How does 5B apply? Because 5B is part of the entire Workers' Compensation Act, and that is the very substance of the appellate court decision authored by Justice Goldenhirsch, because the purpose of the underinsured motorist coverage is to place the insured making the claim in the same position they would be in had they been able to file suit. Did the insured pay attorney's fees in this case? Sure. Sure, they paid attorney's fees. And the purpose of 5B is a matter of, I mean, if you take it the way the ordinary contract is. What attorney's fees were paid? I'm sorry? What attorney's fees were paid by the plaintiff? Well, they pay attorney's fees on the net recovery. Most contracts will say you pay a third. We had a standard contractual attorney's fee. Isn't the portion relating, isn't 5B relating to the fact that there's going to be this 25% because the insurance company has something to gain by the plaintiff pursuing a claim against a third party? That a portion of those attorney's fees and what the statute comes out with is 25% is being utilized so the comp carrier can get their money back. So the comp carrier pays a proportionate share of what it costs to take it back. And that didn't happen. That did not happen, but that's the distinctive issue, the difference in this case. From Olin to Stryker to Sulzer, all the way down. What has been the prevailing underlying issue that this court is stating? And that is the purpose of the insurance statute is to place the insured in the same position that insured would have been in had he or she been able to file suit against a fully insured tortfeasor. Mr. Berry, on pages 29 and 30 of the defendant's brief, the calculations they put in there say that your client is in the same position. But they are incorrect. Now, it's absolutely incorrect. The client receives an arbitration award of 250. That's what Billy Taylor got, $250,000. Let's assume that is a judgment in court for $250,000. Now, from that $250,000, Billy Taylor, were it in court, would pay a workers' compensation reimbursement. In this case, I'm going to round off the figures, $160,000 was the total. But 5B of the statute says the payback is to be reduced by 25%. So that Billy Taylor is not paying the full amount of the fees that have been incurred. So Billy Taylor would have paid back a sum less than approximately $120,000. $250,000 less $120,000, that's the net amount that Billy Taylor receives from which every attorney I know, except for one many years ago, but every attorney I know then calculates their fees. This is not just an argument on fees. This is not my argument that I'm entitled to $40,000 fees. This is an argument that the insured, Billy Taylor, must be in the same position contractually, he has entered into a contract with Pekin, so that he is in the same position he would be in had he filed suit against Mr. Gentry. And Mr. Gentry had the same liability coverages as were afforded Mr. Taylor under his liability coverage. In this case, it was a million. He had coverage of a million, obviously, but a million-dollar case. But Mr. Taylor is assumed to have sued Mr. Gentry, and Mr. Gentry had full coverage to cover the full amount of that $250,000. And from that point, they calculate. Now, it becomes a matter of simple math. Had he recovered the $250,000, he would have reduced it by 75% of the lien, approximately $120,000, and that net difference would have been the amount to Billy Taylor from which he would be obligated to pay his fees, and the net result would be his. So the wording, against such other person, means nothing? Legal proceedings taken against such other person. It means something in the context in which it's applied. Now, let me explain that. That's good legalese, isn't it? What Justice Goldenhirsch found and held, what the majority of the appellate court for the Fifth District held, was once this setoff is created and this court has already sustained it, we're not claiming the setoff is not valid, but it is based upon the Workers' Compensation Act, and they must take the act in its entirety. Now, again, that has meaning if you adopt and understand that the purpose, the legislative purpose, and I'm being redundant, but the legislative purpose of uninsured and underinsured motorist coverage is to place the insured in the same position he or she would be in had they been able to file suit against a fully insured party, tortfeasor. That language has meaning under those contexts, in that context. Well, there's more language, though. In such case, however, if the action against such other person is brought by the injured, it goes on and judgment is obtained and paid, no judgment here, right? Right. No judgment paid here, right, against another person. Or a settlement is made with such other person, no settlement with another person here, with or without suit, then from the amount received by such employee, there shall be paid to the employer the amount of compensation, including amounts that goes on from there. So there's other language we really have to disregard. I mean, the language specifically says, suit against another person where there's a judgment or settlement. Here you have an arbitration of an uninsured motorist. But this court has already properly found. It's accepted. We're not challenging that. That even though in Ullman, in Seltzer, there was no recovery. No employer received benefits. What this court said in upholding the language that said that the setoff may be applied was that it would be unjust, unfair for the employee, for the insured, to be placed in a position that was better than what he would have been in had he filed suit in court against a tortfeasor properly insured. Now, no doubt, sir, that language applies to the situation where the plaintiff, the insured, is able to sue a properly insured, fully insured tortfeasor. And it must be taken in that context, because beginning with the very logic adopted by this court, sound logic, and that is that uninsured and subsequently underinsured motorist coverage is not intended to place either party in a better position. Ultimately, the evaluation of this case and consideration of the calculation, and I want to emphasize, I've tried to do it in the brief, what Justice Goldenhirsch concluded was not that Pekin must pay a fee, but rather the calculation of the setoff based upon the same factors that would be applied had Billy Taylor sued Mr. Gentry and Mr. Gentry had $250,000 of liability coverage. Then there would be no question. And the calculations, Justice Carmichael, that you inquired on, those calculations that set forth in my brief would be exactly what they are, $250,000 less the payback of the net workers' compensation lien with a net balance to the client from which fees. Again, if you read all contracts, I'm sure every attorney-client contract refers to taking a fee on the gross amount. I'll be honest with you, I don't know an attorney that does that. They always take it on the net amount after that lien is deducted. Every attorney I know has given their client the benefit of the reduced lien. In effect, the client ends up with two-thirds of this. But it is the same calculation. One more question. Sure. Again, the section goes on to say, have resulted in or substantially contributed to the procurement by suit, settlement, or otherwise of the proceeds out of which the employer is reimbursed? In this case, by the way, the uninsured motorist coverage, the insurer was Pekin both under the. In a way, they got the benefit of that statute. I mean, they are the insurer. In a way, this is a unique situation. But Pekin is the workers' comp carrier as well as the liability carrier. So, in effect, well, let's look at it that way. Pekin is the workers' comp carrier. And the Gallant Insurance Company, a voice from the past, is the liability carrier. And they're fully insured. Pekin would have gotten the benefit of reimbursement of the workers' compensation, but how much would they have gotten? Or it would have gotten? It would have gotten $120,000, 75%. In this particular case, because of the uniqueness of these facts. Now, uniquely, Pekin gets 100% back in the terms of the set-off because Pekin is the liability, the automobile liability carrier. But that's not. That's a unique set of facts. How often do we see that? I don't know. I wouldn't even pretend to guess. But that, I again address, is not the issue, and it's the very factor that Justice Goldenherz incorporated in his opinion. And that is, it is not what would happen. How can I say this? 5B applies and must be taken in the context of what would have happened had Mr. Gentry, the tortfeasor, been fully insured. That's the legislative intent of uninsured and underinsured motorist coverage. It is that very legislative intent that has been the basis of this Court's opinions in Ullman, Sulzer, Stryker, and a whole list of them. Because I reiterate, the purpose of the set-off is to not give either party an unfair advantage because of the contractual provisions. If that set-off was not a part of this particular language, and keep in mind in Ullman, this Court was asked not to apply the set-off because the statutory language does not even mention workers' comp. And this Court said, no, the fact that it's not mentioned, that's not the issue. The issue is the legislative intent that the insured be placed in the same position as if they've been able to sue an insured party. And because of that, this Court said, we're going to allow the set-off up to this point. I don't know that anyone has addressed the issue of calculating the set-off. And that's what this case brings to the forefront, a matter of calculations. Yes, that language is in 5B. But 5B applies when there is a third-party action. An uninsured and underinsured motorist coverage is designed to place the insured in the same position as if there was a valid third-party action. Now, let me say, and I see I'm coming close here. There is one decision, the Tice decision, Tice v. Cody Plotker, I think it is. It is the 5th District. Justice Welch drafted the majority opinion. Justice Chapman dissented. And I refer to it, both of us refer to it in our opinions. And in that part, on that case and on Terry, reliance is placed for saying 5B shouldn't apply. I want to emphasize that Terry, and Mr. Mudge said it, Terry did not involve the calculation. Terry was an effort by a third party to collect the lien. And the Court said, hold it. A third party can't step in here. An employer can't step in here and collect the lien because it's not a third-party action. While relied on by Justice Donovan, that's false reliance. That is not the issue in this case. The issue in this case is one of calculation of the set-off to fully fulfill and comply with the provisions of the insurance code. For those reasons, and if there are no other questions, but I ask that you sustain the well-concerned, well-thought-out opinion by the 5th District. Thank you, Mr. Mudge. Rebuttal, Mr. Berry? Or Mr. Terry? Rebuttal, Mr. Mudge? Not very often, I was confused. Thank you, Your Honors. I think watching Mr. Berry argue reminded me of why I did want to ask him any questions earlier, and I should have kept my mouth shut. Anyway, Your Honors, you have hit on the exact issue in this case, and that is that the language of 5B requires, and quote, quote, out of any reimbursement received by the employer pursuant to this section, the employer shall pay his pro rata share of all costs and reasonable necessary expenses in connection with such third-party claim, action, or suit where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement, or otherwise, of proceeds out of which the employer is reimbursed. In this particular case, again, I can say it once, I can say it 100 times, but there has not been reimbursement. Essentially, this statute was designed that when an employer is reimbursed their expense of their comp claim, they should not have the benefit of free legal services by the attorney who pursued a third-party claim that ultimately inured to their benefit. I want to make another point, too. It makes no difference whether Pekin Insurance Company is the work comp carrier as well as the uninsured motorist carrier. There's an inference that it may make a difference or that's some kind of unique fact situation, but whether or not Pekin is, let's say it was State Farm was the work comp carrier. The important thing under the decisions that I cited earlier, State Farm, if they were the comp carrier, can't come to Mr. Berry and say, hey, you got a $250,000 UM award. We want that. They can't do that. The appellate court decisions directly on point state that a comp carrier cannot approach the first-party benefits that are available to an employee, whether they be uninsured or underinsured motorist coverage. So they kind of want to have it both ways. The plaintiffs argued against their arbitration award being able to be attached by an employer who paid out comp, but then he turns around and says, here, we didn't give you a reimbursement. We didn't do anything for you. I didn't make any benefit to you, and I want $40,000 because of it. The language of this statute can't be any clearer than it is. And Mr. Berry has not provided any calculations different than these. He had a one-line calculation. But these calculations on page 29 and 30 clearly shows what occurs under the circumstances of this case and that the claimant is in identical situation he would have been had that third-party tortfeasor been fully insured. Because had that third-party tortfeasor been fully insured, Mr. Berry could have gone on and got a judgment against him. He could have paid 75% to the comp carrier. He'd keep his $40,000 for his fee for collecting that for the comp carrier, and it wouldn't put any more money in Mr. Taylor's pocket. What we're talking about here is an attempt to collect a legal fee on an imaginary recovery and an imaginary reimbursement which never occurred. Judge Donovan said it all. He basically stated we are faced here with a contractual setoff, not a third-party claim in lien. And he, too, stated there was no recovery of any lien from a third-party tortfeasor. And as a result, you cannot award an imaginary fee for a nonexistent recovery. And if you don't have any other questions, I thank you for your attention today and have a nice rest of the week. Thank you, Mr. Mudge, and thank you, Mr. Berry. Case number 105158, Billy Taylor v. Pekin Insurance Company, is taken under advisement as agenda number 11.